# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EVELYN AND MARION COLLIER, JR., ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 05-0019** |
| **GARLAND BATISTE, ET AL.** | * | **SECTION "L"(3)** |

## ORDER AND REASONS

Before the Court are eight motions from Plaintiffs and Defendants in this case. Four Defendants have filed motions to dismiss, and have based their various motions on Rules 12(b)(6), 9(b), and 21 of the Federal Rules of Civil Procedure. In addition, Plaintiffs have filed jointly a Motion to Withdraw and Voluntarily Dismiss RICO Claims against four Defendants. Defendant Aurora Financial Services, Inc. has filed a Rule 11 Motion for Sanctions against Plaintiffs and their counsel. Defendants GMAC and IndyMac have filed two Motions to Sever for Misjoinder of Parties pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure. All of these motions came for hearing with oral argument before the Court on August 17, 2005.

For the following reasons, Plaintiff's Motion to Withdraw and Voluntarily Dismiss RICO Claims is hereby GRANTED. Regarding the motions to dismiss, the Motion to Dismiss of Defendant IndyMac is DENIED as moot as to Count 1, DENIED as to Count 6, and GRANTED as to Count 7. The Motion to Dismiss of Defendant GMAC is GRANTED as to Count 10. The Motion to Dismiss of Defendant Aurora is DENIED as moot as to Count 1 and GRANTED as to Count 4. The Motion to Dismiss of Defendant True Title is DENIED as moot. Defendant Aurora's Motion for Sanctions is DENIED. The Court reserves ruling on the Motions of Defendants IndyMac and GMAC to sever for misjoinder of parties until a later date.

## I. Factual and Procedural Background

This case arises out of a series of loans allegedly facilitated by Defendant Garland Batiste through his contracting service, Premier/Renovate, a.k.a. Renovate America. Plaintiffs are six African-American individuals ranging in age from 68 to 81 years old, and all are alleged to be unsophisticated consumers who are unfamiliar with the details of a modern mortgage transaction. Plaintiffs allege that they were fraudulently induced by Mr. Batiste to apply for and receive mortgages on their homes in order to pay Mr. Batiste for home improvements. Plaintiffs allege that Mr. Batiste completed mortgage applications and received loan monies on their behalf. However, according to Plaintiffs, Mr. Batiste partially, and in some cases entirely, failed to complete the promised renovations. Plaintiffs allege they have been damaged by the burden of additional mortgages on their properties and by the hazardous conditions caused by Mr. Batiste's incomplete repairs.

On January 3, 2005, Plaintiffs filed the instant fourteen-count Complaint in the U.S. District Court for the Eastern District of Louisiana. Plaintiffs alleged causes of action against the various Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 *et seq.*, the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. 1602(aa) and 1639, and fraud and breach of contract claims arising under Louisiana law. Plaintiffs named ten Defendants, including Garland Batiste. Plaintiffs alleged that Defendants IndyMac F.S.B. ("IndyMac"), GMFS LLC ("GMFS"), AmSouth Bank,[1] and GMAC Mortgage Corporation d/b/a Ditech.com ("GMAC") participated in the alleged scheme by issuing mortgages on Plaintiffs'

---

[1] Plaintiffs have dismissed their claims against AmSouth Bank.

properties.  Defendant Aurora Financial Services, Inc. ("Aurora") is alleged to have served as a

mortgage broker for two transactions, and Defendant True Title, Inc. ("True Title") is alleged to

have performed title services for two transactions.  Defendants Countrywide is alleged to have

accepted an assignment of the mortgage issued on Plaintiff Geraldine Courtney's property.

Finally, Defendants B.J. Chauvin and Notary on Wheels were alleged to have participated by

notarizing the documents for two mortgages in violation of law.[2]

Plaintiffs filed the required RICO case statement on January 31, 2005, and Plaintiffs filed

the First Amended Complaint on April 1, 2005.  Defendant Garland Batiste has not made an

appearance in the case, and Plaintiffs have obtained a preliminary default judgment against him.

Defendants GMAC, GMFS, AmSouth Bank, Countrywide, and Aurora have answered.

**(a)     The Pending Motions**

In sum, there are eight motions pending before this Court.  There are four motions to

dismiss, two motions to sever for misjoinder of parties, one motion for sanctions, and one motion

to voluntarily dismiss claims.  The motions are summarized as follows:

1.  Plaintiffs' Motion to Withdraw and Voluntarily Dismiss RICO Claims, filed July 5,

2005.  This motion only seeks voluntary dismissal of the RICO claims against IndyMac, Aurora,

GMFS, and True Title (Count 1 of the First Amended Complaint).

2.  Aurora's Motion for Sanctions, filed July 20, 2005.  Defendant Aurora seeks Rule 11

sanctions against New Orleans Legal Assistance and Plaintiffs for the filing of their RICO claim

against Aurora.  Aurora alleges the RICO claim is frivolous.

3.  Defendant IndyMac, F.S.B.'s Motion to Dismiss Pursuant to Federal Rule of

---

[2]  These defendants have also been dismissed from the case.

Procedure 12(b)(6), filed June 20, 2005.  IndyMac seeks dismissal of the RICO claims, the Truth in Lending Act claims, and the state law fraud claims against it (Counts 1, 6, and 7 of the First Amended Complaint, respectively).  These are all the claims pending against IndyMac.

     4. Aurora's Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, filed June 15, 2005.  Aurora seeks dismissal of the RICO claims and the state law fraud claims against it (Counts 1 and 4).  This would be a partial dismissal; Aurora is also named in Counts 2 and 3 of the complaint.

     5. Defendant GMAC's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed June 20, 2005.  GMAC seeks dismissal of the state law fraud claim against it (Count 10).  GMAC also has a TILA claim pending against it (Count 9), so this would be a partial dismissal.

     6. True Title's Motion to Dismiss Under Rule 12(b)(6) and Rule 21, filed June 22, 2005. True Title seeks dismissal of the RICO claim against it (Count 1). This is the only claim against True Title.

     7. Motion to Sever for Misjoinder of Parties of Defendant GMAC, filed August 1, 2005. GMAC seeks severance of the claims of Christine and Louise Smoot against GMAC from the rest of the lawsuit pursuant to Federal Rules of Civil Procedure 20 and 21.

     8. Motion to Sever for Misjoinder of Parties of Defendant IndyMac, filed August 1, 2005. IndyMac seeks severance of the claims of Evelyn and Marion Collier against IndyMac from the rest of the lawsuit pursuant to Federal Rules of Civil Procedure 20 and 21.

## II.  Plaintiffs' Motion to Withdraw and Voluntarily Dismiss RICO Claims

     Plaintiffs have filed a motion to voluntarily dismiss their RICO claim (Count 1), but only

-4-

against four of the seven defendants named in the claim.[3]  Plaintiffs argue that they are entitled to

a voluntary dismissal as of right under Rule 41(a)(1) regarding Defendants IndyMac, Aurora, and

True Title because none of these Defendants have answered or filed a motion for summary

judgment.  Moreover, Plaintiffs seek voluntary dismissal by court order under Rule 41(a)(2) as to

GMFS.  GMFS has answered the complaint.  Plaintiffs state that they wish to withdraw the RICO

claim because they are unfamiliar with this complex area of law, and they believe that they may

not have properly pled the elements of the claim.

 Rule 41 of the Federal Rules of Civil Procedure permits plaintiffs to voluntarily dismiss

causes of action without prejudice if certain conditions are met.  Under Rule 41(a)(1), a plaintiff

may dismiss a cause of action without order of the court by either 1) filing a notice of dismissal

at any time before service of an answer or motion for summary judgment by a defendant,

whichever occurs first, or 2) filing a stipulation of dismissal signed by all parties who have

appeared in the action.  Fed. R. Civ. Proc. 41(a)(1).  If a plaintiff cannot satisfy either of these

standards, a plaintiff may voluntarily dismiss a cause of action by seeking an order of the court

under Rule 41(a)(2).  Under this section, the Court may impose terms and conditions upon the

dismissal.  Fed. R. Civ. Proc. 41(a)(2).

 **a.** **Rule 41 and Partial Dismissal**

 Plaintiffs argue that Rule 41 may be used to dismiss less than all of the claims in a case,

and is not limited to voluntary dismissal of an entire lawsuit.  However, Defendant IndyMac

argues that the language of Rule 41 only permits a plaintiff to dismiss the entire action against a

---

[3] This claim has been resolved regarding the other three Defendants.  Plaintiffs have filed
a Notice of Dismissal regarding B.J. Chauvin and Notary on Wheels, Inc., and Plaintiffs have
obtained a default judgment against Garland Batiste.

defendant, and cannot be used to eliminate single claims.

Both sections of Rule 41(a) provide that an "action" shall be dismissed under the rule. The Fifth Circuit has held that the word "action" in Rule 41 does not mean the entire lawsuit. *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 195 n.5 (5th Cir. 1980); *Plain Growers, Inc. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 254 (5th Cir. 1973). Thus, a plaintiff may dismiss individual parties from a suit under Rule 41(a). *Oswalt*, 616 F.2d at 195 n.5; *Plain Growers*, 474 F.2d at 254.

Defendants point to a Fifth Circuit case, *Exxon Corporation v. Maryland Casualty Company,* as standing for the proposition that Rule 41 cannot be used to dismiss a single claim against a single defendant. 599 F.2d 659, 662 (5th Cir. 1979). In *Exxon*, the court stated that Rule 41(a) could not be used to dismiss less than all of the claims within a lawsuit. *Id.* However, *Exxon* had an unusual procedural posture, where dismissal of claims against one defendant could have resulted in parallel lawsuits in state and federal court. *Id.* In *Oswalt*, the Fifth Circuit basically limited its holding in *Exxon* to its facts. *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 195 n.5 (5th Cir. 1980).

Thus, the Fifth Circuit's position is that the "action" in Rule 41(a) "does not mean the entire controversy of a lawsuit." *Id.* Since *Exxon*, the Fifth Circuit has not ruled directly on the issue at hand – whether Rule 41(a) can be used to dismiss a single claim. However, the clear import of *Oswalt* and *Plain Growers* is that Rule 41(a) can be used in this fashion. There seems to be no practical reason why partial dismissal should not be allowed under Rule 41(a). The Federal Rules do not ban partial dismissals: plaintiffs have the ability to voluntarily dismiss single claims under Rule 15 and may voluntarily dismiss parties under Rule 21. It appears the

-6-

Plaintiffs are correct that they may use Rule 41(a) to dismiss only Count 1 of the complaint.

**b.    Voluntary Dismissal**

Of the four Defendants subject to Plaintiffs' motion, only GMFS filed an answer prior to the filing of Plaintiffs' motion.[4] While Plaintiffs have filed a motion for voluntary dismissal, Plaintiffs do not need leave of court to dismiss the RICO claims against IndyMac, Aurora, and True Title. The district court may treat a motion for voluntary dismissal as a notice of dismissal under Rule 41(a)(1). *See Williams v. Ezell*, 531 F.2d 1261, 1263 (5th Cir. 1976) (filing of a "'Motion for Dismissal' rather than a 'Notice of Dismissal' is, in our opinion, a distinction without a difference" under Rule 41(a)(1)). Accordingly, because Plaintiffs' motion serves as a notice of dismissal regarding these Defendants, no action is required from the Court to dismiss the Plaintiffs' RICO claims against IndyMac, Aurora, and True Title.

Even though under Rule 41(a)(1) Plaintiffs have the right to withdraw their RICO claims against IndyMac, Aurora, and True Title without leave of court, these three Defendants urge the Court to deny Plaintiffs' motion and instead dismiss the RICO claims with prejudice. Defendants argue that a voluntary dismissal at this stage will unduly prejudice them because of the time and effort spent in preparing their motions to dismiss the RICO claim, and because a dismissal without prejudice will leave them with the threat of a possible RICO claim to be re-filed at a later date. In addition, Defendants argue that they filed their motions to dismiss prior to the Plaintiffs' motion to withdraw claims. Defendants argue that a claim-dispositive motion like a motion to dismiss terminates the Plaintiffs' right to voluntarily dismiss claims under Rule 41.

---

[4]    Aurora filed an answer on August 15, 2005. However, because it was filed after the filing of Plaintiffs' motion for voluntary dismissal, Aurora's answer has no bearing upon Plaintiffs' right to voluntarily dismiss the RICO claim under Rule 41(a)(1).

However, Rule 41(a)(1) and the case law are clear that a plaintiff may voluntarily dismiss a cause of action without leave of court prior to the filing of an answer or motion for summary judgment. *Carter v. U.S.*, 547 F.2d 258, 259 (5th Cir. 1977). A plaintiff retains this right even if a defendant has filed a motion to dismiss prior to the plaintiff's motion. *Id.* at 258. Although a motion to dismiss is generally considered a claim-dispositive motion, *Brown v. Navarro*, 887 F.2d 552, 558 n.8 (5th Cir. 1989), a motion to dismiss is not within the pleadings that terminate a plaintiff's right to voluntarily dismiss under Rule 41. *Carter*, 547 F.2d at 259. The Fifth Circuit has stated that a plaintiff's right to withdraw a cause of action is "not cut off by a motion to dismiss." *Exxon*, 599 F.2d at 661.

As a general rule, motions for voluntary dismissal should be freely granted unless the adverse party will suffer clear legal prejudice other than the mere prospect of a second lawsuit. *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2000); *Manshack v. Southwestern Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990). Because there is no clear legal prejudice here to Defendants beyond the threat of defending a second RICO claim, the Court GRANTS Plaintiffs' Motion to Withdraw and Voluntarily Dismiss RICO Claims regarding IndyMac, Aurora, and True Title.

Because GMFS has answered the First Amended Complaint, Plaintiffs must seek leave of court to dismiss the RICO claims against GMFS pursuant to Rule 41(a)(2). GMFS has not opposed the Plaintiffs' motion, and there appears to be no clear legal prejudice that would result from a dismissal. Accordingly, Plaintiffs' Motion to Withdraw and Voluntarily Dismiss RICO Claims as to IndyMac, Aurora, True Title, and GMFS is GRANTED, and Count 1 of the Complaint and First Amended Complaint is hereby DISMISSED without prejudice.

## II. Aurora's Motion for Sanctions

Defendant Aurora has filed a Motion for Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure against Plaintiffs and Plaintiffs' counsel, New Orleans Legal Assistance. Aurora alleges that Plaintiffs filed the RICO claim without reasonably investigating to determine whether the factual and legal bases existed for such a claim. Because Aurora believes the RICO claim is frivolous, Aurora argues that sanctions are appropriate.

Plaintiffs counter that Aurora's motion was improperly filed. Rule 11 provides that an offending party has 21 days from the date of service of the motion for sanctions to withdraw the challenged allegations. Fed. R. Civ. P. 11(c)(1)(A). This is a safe-harbor provision, and allows parties in good faith to withdraw defective claims prior to sanction by the district court. Plaintiffs argue that their motion to voluntarily dismiss the RICO claim as to Aurora was filed within the 21-day safe harbor period.

On June 13, 2005, Aurora sent a draft of the Motion for Sanctions to Plaintiffs' counsel. Plaintiffs filed their Motion to Withdraw and Voluntarily Dismiss RICO Claims on July 5, 2005. It is clear that Plaintiffs' Motion to Withdraw occurred within the 21-day safe harbor provision of Rule 11.[5] Under Fifth Circuit precedent, Plaintiffs' motion to withdraw the RICO claim against Aurora serves as a notice of dismissal, because leave of court was not required to dismiss the claim against Aurora. *Williams v. Ezell*, 531 F.2d 1261, 1263 (5th Cir. 1976). Therefore, the Court finds that Plaintiffs dismissed the RICO claim against Aurora within the 21-day safe harbor period of Rule 11. Moreover, the Plaintiffs' attempt to withdraw the claims within the

---

[5] The Motion to Withdraw was filed on the 22nd day after June 13, 2005. The 21st day after June 13th was July 4th, a legal holiday. Pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, the motion was timely filed.

21-day safe harbor provision, even if that attempt had been ineffective, was sufficient to avoid sanctions in this matter. Because Aurora's motion was improperly filed, Aurora's Motion for Sanctions is hereby DENIED.

### III. Defendants' Motions to Dismiss Pursuant to Rule 12(b)(6)

The Federal Rules of Civil Procedure permit a defendant to seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a district court should construe the complaint liberally in favor of the plaintiff, assuming all factual allegations to be true. *See Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999). Rule 12(b)(6) motions are viewed with disfavor and are rarely granted. *See id.* A complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

#### 1. Count 1: Civil RICO claims – Motions by Defendants IndyMac, Aurora, and True Title

Defendants IndyMac, Aurora, and True Title all have filed motions to dismiss Count 1 of Plaintiffs' First Amended Complaint. Because the Court has granted Plaintiffs' Motion to Withdraw Count 1, all of these motions have now been rendered moot. Accordingly, Defendants' motions to dismiss Count 1 are hereby DENIED as moot.

#### 2. Count 6: Truth in Lending Act claim - Motion by Defendant IndyMac

Defendant IndyMac moves to dismiss the Truth in Lending Act ("TILA") claims alleged in Count 6. Under TILA, consumer lenders must make certain "material disclosures" clearly and

conspicuously prior to the extension of credit.  15 U.S.C. 1631-32.  Material disclosures for loans

and mortgages issued under TILA include an accurate disclosure of the annual percentage rate

and the method of determining the finance charge, among other disclosures.  15 U.S.C. 1602(u).

A lender may be exposed to civil or criminal liability in the form of fines, penalties, or

imprisonment due to its failure to provide material disclosures under TILA.  15 U.S.C. 1611 &

1640.  Also, the consumer may rescind the transaction if the material disclosures are not made.

15 U.S.C. 1635.

Plaintiffs Evelyn and Marion Collier contend that IndyMac failed to provide "all

'material' disclosures" required by TILA. Plaintiffs specifically allege that IndyMac failed to

provide a Disclosure Statement containing the accurate amount financed, the accurate finance

charge, and the accurate annual percentage rate of the loan issued by IndyMac in favor of the

Colliers. IndyMac has attached to its 12(b)(6) motion the Disclosure Statement mentioned in the

Colliers' complaint. The court may consider this document without transforming the 12(b)(6)

motion into a summary judgment motion. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d

496, 498 (5th Cir. 2000).  The Disclosure Statement appears to provide the information that

IndyMac allegedly failed to provide.  Moreover, that document is affixed with the signatures of

both Marion and Evelyn Collier.

However, Plaintiffs contend that the issue is not whether the Disclosure Statement was

provided, but whether that statement was accurate.  According to Plaintiffs, the accuracy of the

Disclosure Statement cannot be determined from its face.  Moreover, Plaintiffs argue that only

notice pleading under Rule 8 of the Federal Rules of Civil Procedure is required for TILA claims.

Plaintiffs argue that the allegations in Count 6 sufficiently put IndyMac on notice of the TILA

claim asserted, and are not merely broad-brush, boilerplate allegations.

The Court agrees with Plaintiffs.  In ¶ 156 of the First Amended Complaint, Plaintiffs state three times that IndyMac's Disclosure Statement was not "accurate."  Only notice pleading is required for TILA claims.  *Stefanski v. Mainway Budget Plan, Inc.*, 456 F.2d 211, 212 (5th Cir. 1972).  Plaintiffs' allegations are sufficient to put IndyMac on notice of the claim asserted. Although IndyMac demonstrated that it provided the Colliers with a Disclosure Statement, TILA also requires that statement to be accurate.  18 U.S.C. 1638(a).  This is not an issue that can be resolved without further discovery.  Accordingly, IndyMac's Motion to Dismiss is hereby DENIED as to Count 6 of the Complaint and First Amended Complaint.

### 3.  Counts 4, 7 and 10: Fraud under Louisiana Civil Code article 1953 – Motions by Defendants IndyMac, Aurora, and GMAC

Defendants Aurora, IndyMac, and GMAC ("Movants") move to dismiss the state fraud claims alleged against them in Counts 4, 7, and 10 respectively. In each Count, Plaintiffs contend that Batiste fraudulently misrepresented and omitted information relating to the repair of Plaintiffs' homes in violation of Louisiana Civil Code article 1953. Counts 4, 7, and 10 allege that Movants are liable for the fraud allegedly committed by Batiste under a theory of agency. Movants contend that Plaintiffs have not sufficiently alleged fraud because: (1) Plaintiffs do not claim that Movants themselves committed fraud; and (2) Plaintiffs allegations of agency are too scant to withstand a 12(b)(6) motion.

In Plaintiffs' reply memoranda, Plaintiffs assert that they should not be held to a heightened pleading standard for their state law fraud claim, because only notice pleading is required under Rule 8 of the Federal Rules.  Moreover, Plaintiffs argue that general allegations of

fraud are sufficient in a complaint, prior to discovery.  Plaintiffs cite to a recent U.S. Supreme

Court case, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), to support their claim that

minimal pleading is required.  However, *Swierkiewicz* dealt with pleading standards for

employment discrimination suits, and did not change Rule 9(b)'s and Louisiana state law's

requirement that fraud be pled with particularity.  *See General Elec. Capital Corp. v. Posey,* No.

04-10251, -- F.3d --, 2005 WL 1523848 at *4 (5th Cir. Jun. 29, 2005) (affirming that

*Swierkiewicz* does not apply in cases of actual fraud, which are to be evaluated under Rule 9(b)'s

heightened pleading standard).

> **a.    Plaintiffs' Agency Theory**

Counts 4, 7, and 10 of Plaintiffs' First Amended Complaint allege that Batiste committed

fraud in violation of Louisiana Civil Code article 1953.  Under these counts, Plaintiffs do not

contend that Movants themselves possessed any intention to defraud.  The Plaintiffs' allegations

of agency are identical for each Movant:

> This Count is brought by [Plaintiff] against Garland (Garlon) Batiste and
> [Movant], for whom Batiste acted as an agent, making [Movant] fully liable for
> the acts and omissions of Batiste.

Plaintiffs do not describe the nature of the relationship between Batiste and each Movant any

further.

The elements of a successful fraud claim under Louisiana law are: (1) intent to defraud by

defendant; and (2) actual or potential damages to plaintiff.  *See St. Paul Mercury Ins. Co. v.

Williamson,* 224 F.3d 425 (5th Cir. 2000). Under Louisiana law, a principal-agent relationship

only exists if it is clearly established that both parties intended to create such a relationship.

*Matter of Oxford Management, Inc.*, 4 F.3d 1329, 1336 (5th Cir. 1993) (citing *Patrick v. Patrick,*

230 So.2d 759, 762 (La. App. 1970)).[6] To withstand Movants' 12(b)(6) motion, the intent to

create a principal-agent relationship must be asserted as a matter of fact rather than as a

conclusory allegation. *See Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.

1994). The Plaintiffs' language in invoking the theory of agency is unsupported by any detailed

allegations of a principal-agent relationship between each Movant and Batiste.  The Court finds

that the Plaintiffs' allegations of agency are too sparse to support a claim of fraud against the

Movants.

> **b.    Plaintiffs' Conspiracy and Beneficiary Theories**

Plaintiffs also allege that the Defendants should be liable for fraud under two alternative

theories.  First, Plaintiffs argue that Defendants should be liable for fraud under a theory of

conspiracy:  borrowing the factual allegations of conspiracy between Batiste and the Movants

from Count 1, the Plaintiffs argue that a conspiracy to defraud existed between the lenders and

Batiste.  Under Paragraphs 43, 82, and 101 of the First Amended Complaint, Plaintiffs make

allegations that Aurora and IndyMac participated in a scheme to defraud, and either knew or

should have known of Mr. Batiste's alleged fraud.  However, these paragraphs supporting a

conspiracy are included in Plaintiffs' civil RICO claims, and not the fraud claims at issue.  Also,

GMAC, one of the Movants, is not included in these conspiracy allegations.

Second, Plaintiffs argue that Defendants should be liable because they have reaped the

benefits of Batiste's fraud by receiving the profits of the Plaintiffs' loans.  Plaintiffs cite to

several Louisiana cases which hold that beneficiaries of fraud are proper parties to a fraud claim.

---

[6] Aurora also cites *Blanchard v. Ogima*, 253 La. 34, 215 So.2d 902 (1968) to support the proposition that a principal is not vicariously liable for the physical torts of an agent. However, because fraud is not a physical tort, *Blanchard* and its progeny are inapplicable.

*Board of Comm'rs v. Shushan*, 197 La. 598, 614, 2 So.2d 35 (1941); *Jefferson Business Serv. v. Olivetti*, 393 So.2d 880, 882 (La. App. 4th Cir. 1981).  However, the beneficiary allegations are not clearly included in the complaint.[7]

In a Rule 12(b)(6) motion, the Court is obligated to consider "any set of facts" that would support the Plaintiffs' claims for relief.  *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955).  Rule 9(b) requires specificity in pleading fraud: the rule requires the plaintiff to allege facts and circumstances sufficient to warrant the conclusion that fraud has occurred.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1022 (5th Cir. 1994).  The purpose of Rule 9(b)'s requirement is to preclude litigants from filing baseless complaints, particularly because allegations of fraud can damage a defendant's reputation.  *Id.*

The Court is faced with the issue of whether allegations contained in another part of a plaintiff's pleading can suffice to state a fraud claim.  In a similar case, *Chrysler Credit Corporation v. Whitney National Bank*, a district judge found that, although no fraud claim appeared in the complaint, "one can find most of the necessary information [for the fraud claim] scattered about in various portions of the Amended Complaint."  824 F. Supp. 587, 598 (E.D. La. 1993).  However, the Court found that the scattered allegations were insufficient to place the defendant in the case on notice of the fraud claim, because the complaint nowhere stated that fraud was alleged, and did not contain any theory regarding why the defendant was liable for fraud.  *Id.* at 597-98.

---

[7]  The only references found to Plaintiffs' beneficiary theory are in Paragraphs 117 and 121, which describe Aurora's and IndyMac's intentions to reap substantial profit from the allegedly fraudulent transactions.  Again, these allegations are contained within Plaintiffs' RICO claim, and do not apply to GMAC.

-15-

In this case, Plaintiffs argue that the Court should borrow their allegations of a fraudulent conspiracy from Count 1 in order to state a claim under state law for fraud. However, as discussed earlier in this Order, Plaintiffs have withdrawn Count 1 of the Complaint. Plaintiffs are asking the Court to borrow allegations of fraud from a portion of the Complaint that is dismissed and no longer exists. Plaintiffs' Complaint is somewhat stronger than the complaint in *Chrysler*, where there was no statement of fraud in the complaint. However, the fraud allegations are still too tenuous to survive a motion to dismiss because they fail to place the defendants on notice of claims against them. The agency theory stated under Counts 4, 7, and 10 is insufficient to survive a motion to dismiss. The beneficiary theory put forth by the Plaintiffs during oral argument is not stated in the Complaint. Finally, the conspiracy theory stated in Count 1 of the Complaint has been voluntarily withdrawn by the Plaintiffs, and therefore cannot serve to bolster the allegations of a state law fraud claim. Moreover, one defendant subject to a state law fraud claim, GMAC, was not included in Count 1: there are no allegations of a conspiracy to defraud against this defendant. Accordingly, IndyMac's, Aurora's, and GMAC's motions to dismiss as to Counts 4, 7, and 10 are hereby GRANTED.

## IV. GMAC's and IndyMac's Motions to Sever for Misjoinder of Parties

GMAC and IndyMac argue that this case involves four separate transactions – the loans entered into by the Colliers, Ms. Courtney, Ms. Ellis, and the Smoots, respectively. All of these transactions occurred on different dates, and involved different lenders and different Plaintiffs. GMAC and IndyMac assert that no one Plaintiff can assert any claim against all Defendants jointly, and that there is no logical relationship between the various transactions. GMAC and IndyMac argue that grouping of the four transactions together creates confusion among the

-16-

various Defendants' arguments and litigation postures, and is therefore prejudicial to the Defendants.

Plaintiffs have not opposed the Defendants' motions to sever, and have informed the Court that they consent to severance of the case into four lawsuits. However, given the complexity of the present motions, the Court shall reserve ruling on GMAC's and IndyMac's motions to sever at this time. Severance may indeed be appropriate, but further consideration is required to determine what claims and what Defendants remain in the case.

## III. Conclusion

Accordingly, Plaintiffs' Motion to Withdraw and Voluntarily Dismiss RICO Claims is GRANTED. Regarding the motions to dismiss, the Motion to Dismiss of Defendant IndyMac is DENIED as moot as to Count 1, DENIED as to Count 6, and GRANTED as to Count 7. The Motion to Dismiss of Defendant GMAC is GRANTED as to Count 10. The Motion to Dismiss of Defendant Aurora is DENIED as moot as to Count 1 and GRANTED as to Count 4. The Motion to Dismiss of Defendant True Title is DENIED as moot. Defendant Aurora's Motion for Sanctions is DENIED. The Court reserves ruling on the Motions of Defendants IndyMac and GMAC to sever for misjoinder of parties until a later date.

IT IS FURTHER ORDERED that a status conference shall be held with counsel for the remaining parties in this case on November 8, 2005 at 1:30 p.m. in New Orleans, Louisiana.

Houston, Texas, this 26 day of October, 2005.

UNITED STATES DISTRICT JUDGE

-17-